United States District Court
Southern District of Texas
**ENTERED**
July 09, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MITCHELL CROCKER, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-01051 |
| | § | |
| CENTERPOINT ENERGY, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Defendant CenterPoint Energy has filed a motion for summary judgment. *See* Dkt. 20. Plaintiff Mitchell Crocker has filed a motion for clarification. *See* Dkt. 26. Having reviewed the briefing, the record, and the applicable law, I deny the motion for clarification and grant the motion for summary judgment.

## BACKGROUND

In September 2011, Crocker took a job with CenterPoint. He eventually became a Senior Project Manager in the Continuous Improvement department. Beginning in the fall of 2022, CenterPoint began having concerns with Crocker's job performance. On four separate occasions between September 7, 2022, and November 22, 2022, Alexander Barrie, Crocker's immediate supervisor, met with Crocker about "his communication plans and reports, unacceptable performance on customer surveys, . . . inconsistent use of project management templates, and poor attendance." Dkt. 20-7 at 3.

Despite these coaching sessions, CenterPoint insists that Crocker failed to show improvement. On January 6, 2023, Barrie placed Crocker on a 60-day Performance Improvement Plan ("PIP"). The PIP identified four main areas in which Crocker needed to improve: (1) project quality, (2) collaboration, (3) client feedback, and (4) attendance. Specifically, the PIP required Crocker to receive a score of at least 85 percent on customer surveys and maintain attendance in line

with his designated work schedule. Crocker did not meet the PIP objectives. He scored only 73.13 percent on customer surveys. He also showed up to work more than 30 minutes late on 22 separate occasions between January 6, 2023, and February 23, 2023. Because Crocker failed to meet his PIP objectives, CenterPoint terminated his employment on March 15, 2023.

On October 17, 2023, Crocker filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In the charge, Crocker specified that CenterPoint had discriminated against him based on his race and color. After receiving a right-to-sue letter, Crocker, represented by counsel, instituted this lawsuit in state court. Crocker's state court petition, the live pleading in this case, does not allege any causes of action for race or color discrimination, whether under Title VII of the Civil Rights Act of 1964 ("Title VII") or any state law equivalent. Instead, Crocker brings retaliation claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203,[1] and Texas Labor Code § 21.055.[2] The factual allegations underpinning Crocker's federal and state law retaliation claims are identical: Crocker "engaged in a protected activity by filing a charge of discrimination," and CenterPoint unlawfully terminated Crocker "very shortly after" the company received notice that Crocker had filed a charge of discrimination. Dkt. 1-5 at 5. In addition to the retaliation claims brought under the ADA and the Texas Labor Code, Crocker alleges a defamation claim.

CenterPoint has moved for summary judgment on all of Crocker's claims. Three days after CenterPoint filed its motion for summary judgment, Crocker's counsel asked to withdraw from the case. Crocker now represents himself in this matter.

---

[1] Section 12203 prohibits retaliation against a person because he has exercised his rights under the ADA. *See* 42 U.S.C. § 12203.

[2] Section 21.055 prohibits an employer from retaliating against a person who, among other things, "makes or files a charge" of discrimination. Tex. Lab. Code § 21.055.

## MOTION FOR CLARIFICATION

Before I turn to CenterPoint's motion for summary judgment, I will first address Crocker's motion for clarification, which he filed on the same day as his summary judgment response. In the motion for clarification, Crocker seeks four types of relief: (1) "Clarification of Disputed Facts"; (2) "Compelled Documentary Discovery"; (3) "Acknowledgment of Violations"; and (4) "Preservation of Pro Se Rights and Judicial Notice." Dkt. 26 at 10–12. For the reasons that follow, Crocker's motion for clarification is denied.

The first two categories—Clarification of Disputed Facts and Compelled Documentary Discovery—are nothing more than a motion to compel discovery masquerading as a motion for clarification. Crocker specifically asks me to "[o]rder [CenterPoint] to disclose the complete methodology and basis of the internal survey . . . and to detail the rationales underlying the imposition of both the PIP . . . and the Alternative Work Schedule Agreement." *Id.* at 10. Crocker also requests that I "[d]irect [CenterPoint] to produce all relevant internal communications from company departments . . . that directly interfered with [his] career development." *Id.* at 11. To the extent Crocker seeks discovery from CenterPoint, that ship has sailed. Discovery closed on January 27, 2025, and Crocker did not serve a single discovery request during the discovery period. *See* Dkt. 17 at 2. He offers no reason—much less good cause—for modifying the discovery deadline.

The third category—Acknowledgment of Violations—asks me to

> [a]cknowledge that [CenterPoint's] sequential adverse actions—including the imposition of the Alternative Work Schedule Agreement, the pretextual PIP, the ostracization and exclusion following the EEOC Charge . . . , and the termination on March 15, 2023—constitute clear violations of Title VII, the Texas Commission on Human Rights Act, and the Whistleblower Protection Act.

Dkt. 26 at 11–12. This appears to be a request to grant summary judgment in Crocker's favor on claims arising under "Title VII, the Texas Commission on Human Rights Act, and the Whistleblower Protection Act." *Id.* at 12. There are several problems with this request. First, the deadline for filing a dispositive

motion passed on March 3, 2025, and Crocker did not file the present motion until seven weeks after that date. Second, the statutory basis upon which Crocker seeks relief—Title VII, the Texas Commission on Human Rights, and the Whistleblower Protection Act—are not mentioned in his operative pleading for affirmative relief. Third, Crocker offers no explanation as to why he should be entitled to prevail on these unpled claims; he simply claims he is in the right.

The fourth category—Preservation of Pro Se Rights and Judicial Notice—asks me to (1) liberally construe Crocker's pleadings since he is proceeding pro se, and (2) take judicial notice of an unsigned and undated letter from Crocker to the court. Although Crocker is currently representing himself in this litigation, he was previously represented by an attorney who filed the operative pleading on Crocker's behalf before withdrawing from the case. Still, even if I liberally construe Crocker's pleadings as he requests, Crocker's pro se status does not excuse him from the burden of establishing that there is a genuine issue of material fact in order to avoid summary judgment. *See E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014). On the judicial notice issue, the unsigned and undated letter is not the proper subject of judicial notice as it does not involve facts that are (1) "generally known within the trial court's territorial jurisdiction"; or (2) capable of accurate and ready determination "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2).

I now turn to the motion for summary judgment.

## MOTION FOR SUMMARY JUDGMENT

### A. LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (citation modified). To survive summary judgment, the nonmovant

must present evidence to support each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, "the nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (citation modified).

### B.   RETALIATION CLAIMS

As noted, Crocker's live pleading advances two retaliation claims—one under the ADA and the other under the Texas Labor Code.

#### 1.   *ADA Retaliation Claim*

At a June 6, 2025 hearing, Crocker voluntarily abandoned his ADA retaliation claim. As a result, the ADA retaliation claim is no longer before me.

#### 2.   *Texas Labor Code § 21.055 Retaliation Claim*

Turning to the Texas Labor Code § 21.055 retaliation claim, CenterPoint argues that this claim is barred because Crocker has failed to exhaust his administrative remedies as it relates to disability discrimination. The problem with this argument is that Crocker's § 21.055 claim is not based on disability discrimination. In his live pleading, Crocker claims he "filed a charge of racial discrimination with the [EEOC]," and that he was fired "very shortly after" for filing that charge of discrimination. Dkt. 1-5 at 4, 5.

As I indicated at the June 6, 2025 hearing, this claim confuses me. The summary judgment record indicates that CenterPoint terminated Crocker on March 15, 2023. *See* Dkt. 20-2 at 29. Crocker did not file his administrative charge with the EEOC until October 17, 2023. *See* Dkt. 20-11 at 3. Because Crocker filed his EEOC charge approximately seven months *after* his employment with

CenterPoint ended, it defies logic that CenterPoint retaliated against Crocker for filing his EEOC charge.

Causation is a necessary element of a § 21.055 retaliation claim. "An employee must establish that absent [his] protected activity, the materially adverse employment action would not have occurred when it did." *Tex. Dep't of Crim. Just. v. Flores*, 555 S.W.3d 656, 668 (Tex. App.—El Paso 2018, no pet.). "In other words, a plaintiff must prove that [he] would not have suffered an adverse employment action 'but for' engaging in the protected activity." *Id.*

Although CenterPoint did not raise this causation argument in its motion for summary judgment, a "district court may enter summary judgment sua sponte if the parties are provided with reasonable notice and an opportunity to present argument opposing the judgment." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2000). "A party must be given at least ten days notice." *Id.* On June 9, 2025, I issued a written order providing Crocker notice that I was "inclined, based on the summary judgment record before me, to grant summary judgment in favor of CenterPoint on the § 21.055 retaliation claim for lack of causation." Dkt. 39 at 2. I gave Crocker until June 20, 2025, "to submit any argument and/or evidence explaining why summary judgment should not be entered against him on his § 21.055 retaliation claim for lack of causation." *Id.* On June 20, 2025, Crocker timely submitted a written response, outlining why he believes summary judgment should not be entered against him on the § 21.055 claim. *See* Dkt. 43.

Crocker argues it is irrelevant that he did not file a formal charge of discrimination until October 17, 2023, because he engaged in protected activity when he filed an inquiry with the EEOC on March 2, 2023, just 13 days before he was terminated. In the six-page EEOC inquiry submitted on March 2, 2023, Crocker identifies, among other things, basic information about himself and his employer, the reason for his claim, and the adverse actions allegedly taken against him. *See id.* at 20–24.

It would be unlawful for CenterPoint to retaliate against Crocker for filing an inquiry with the EEOC. *See* Tex. Lab. Code § 21.055 (prohibiting retaliation against an employee who "opposes a discriminatory practice," "makes or files a charge," "files a complaint," or "testifies, assists, or participates in any manner in an investigation, proceeding, or hearing"). But Crocker cannot avoid summary judgment on his § 21.055 claim by merely pointing out that he submitted an EEOC inquiry on March 2, 2023, and that CenterPoint terminated him on March 15, 2023. He is required to present some evidence indicating that CenterPoint had actual knowledge of the EEOC inquiry. As the Fifth Circuit has explained:

> To establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity. Generally, this requires some showing that the decisionmaker—the individual who actually made the decision or caused the decision to be made—was aware of the activity. A decisionmaker's awareness may be established by circumstantial evidence. . . .
>
> . . . Demonstrating that a decisionmaker was aware of an employee's protected activity certainly requires more evidence than mere curious timing coupled with speculative theories. . . . And if the plaintiff fails to produce any evidence that a decisionmaker was aware of the protected activity, judgment as a matter of law should be granted. *See Bain v. Ga. Gulf Corp.*, 462 [F. App'x] 431, 433–34 (5th Cir. 2012) (per curiam) (crediting the sole decisionmaker's testimony that he had no knowledge of protected activity when the plaintiff did not present any evidence to the contrary); *Lopez v. Martinez*, 240 [F. App'x] 648, 650 (5th Cir. 2007) (per curiam) (noting that the plaintiff "presented no evidence establishing the superior's knowledge").

*EEOC v. EmCare, Inc.*, 857 F.3d 678, 683–84 (5th Cir. 2017) (citation modified).[3]

Here, the summary judgment record contains no evidence that CenterPoint knew that Crocker had made an inquiry to the EEOC in March 2023. Crocker does not suggest that he informed CenterPoint of that inquiry, and there is no indication that CenterPoint learned of the inquiry from any other source. I have no reason to

---

[3] Section 21.055 is interpreted in accordance with parallel provisions of Title VII. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 818 (Tex. 2018).

believe CenterPoint received notice of the EEOC inquiry because, unlike the filing of an EEOC charge, for which the EEOC is required to serve notice on the employer within 10 days of filing, *see* 42 U.S.C. § 2000e-5(b), an EEOC inquiry is not automatically forwarded to the employer. The burden is on Crocker to create a genuine issue of material fact as to causation. He has not done so. Because Crocker has failed to produce evidence sufficient for a factfinder to conclude that CenterPoint was aware that Crocker had filed an EEOC inquiry prior to his termination, CenterPoint is entitled to summary judgment on the § 21.055 claim.

## C. DEFAMATION CLAIM

To prevail on a defamation claim under Texas law, Crocker must demonstrate that CenterPoint (1) "published a false statement; (2) that defamed [Crocker]; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). A plaintiff seeking to recover on a defamation claim must, at a bare minimum, "identify the alleged defamatory statement and the speaker." *Ameen v. Merck & Co.*, 226 F. App'x 363, 370 (5th Cir. 2007); *see also Moyer v. Jos. A. Bank Clothiers, Inc.*, No. 3:11-cv-3076, 2013 WL 4434901, at *6 (N.D. Tex. Aug. 19, 2013) (holding that a plaintiff asserting a defamation claim must identify "the time, place, content, speaker, and listener" of the defamatory statement); *Davis v. Prosperity Bank*, 383 S.W.3d 795, 804 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (affirming grant of summary judgment in favor of defendant where plaintiffs failed to identify "any specific statements they claim to be defamatory").

Crocker alleges a defamation claim in his live pleading, but he is unable to identify a single defamatory statement made by CenterPoint. This dooms his defamation claim. At his deposition, Crocker repeatedly stated that he did not know or could not recall CenterPoint making any false statement.

> Q. Are you aware you've also brought a claim in this case for defamation against CenterPoint?

8

> A. I can't recall.
>
> Q. Do you know what that means? Defamation? What does that word mean to you, "defamation"?
>
> A. I don't know.
>
> Q. Do you believe that CenterPoint made false statements about you to anyone?
>
> A. I can't recall. Don't know.
>
> Q. Is there any—is there any statement that you can identify today as you sit here under oath to give your deposition testimony, that you believe CenterPoint made about you that is false?
>
> A. I don't know.
>
> Q. Can you identify any false statement that you believe CenterPoint made about you?
>
> A. Right now, I can't recall.
>
> . . .
>
> Q. Is there any statement that you believe CenterPoint made against you that was false that caused you harm?
>
> A. I don't know.

Dkt. 20-2 at 34.

In his summary judgment response, Crocker claims CenterPoint "disseminated false statements to the Texas Workforce Commission ([EXHIBIT 5]) and internal stakeholders ([EXHIBIT 6])," but he fails to identify any particular statement as the basis for his defamation claim. Dkt. 25 at 8. Exhibit 5 is part of an opinion from the Texas Workforce Commission; Exhibit 6 is an illegible copy of Crocker's responses to CenterPoint's requests for production. *See* Dkt. 25 at 25–41. Even if the documents did, hypothetically, contain defamatory statements, such statements are unquestionably privileged. *See James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) ("Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander."); *Garry v. Yeager*, No. 3:21-cv-00813, 2022 WL 1750044, at *3 (N.D. Tex. May 11, 2022) ("[P]roceedings before the [Texas Workforce Commission] are considered quasi-judicial

proceedings, therefore any communications involved in these proceedings cannot be the basis for defamation claims." (quotation omitted)).

Because the summary judgment record is devoid of any evidence that CenterPoint made a defamatory statement, CenterPoint is entitled to summary judgment on Crocker's defamation claim.

## MOTION TO AMEND

In response to CenterPoint's motion for summary judgment, Crocker contends that he is pursuing causes of action under a shopping list of state and federal statutes. These include: Title VII; the Whistleblower Protection Act (5 U.S.C. § 2302(b)(8)-(9)); 42 U.S.C. § 1981; Texas Labor Code §§ 21.051, 21.055, 21.1065, 21.202, 21.208, 21.259; and Texas Civil Practice and Remedies Code § 73.001. *See* Dkts. 25 at 5, 26 at 5, 32 at 5, 43 at 3.[4] The problem is that all these claims—except for Texas Labor Code § 21.055—are nowhere to be found in Crocker's live pleading. A claim raised for the first time in response to a dispositive motion "is not properly before the court." *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (quotation omitted) (collecting cases). But where, as here, a pro se plaintiff raises a new claim for the first time in response to a dispositive motion, a district court should construe the response as a motion to amend the lawsuit. *See Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008).

The Docket Control Order in this case set a September 6, 2024 deadline to amend pleadings. *See* Dkt. 17 at 1. Rule 16(b)(4) "governs amendment of pleadings after a scheduling order's deadline to amend has expired." *Marathon Fin. Ins., Inc. v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009). That rule provides that a

---

[4] Crocker filed a timely response to the summary judgment motion, *see* Dkt. 25, and then filed a second response five weeks later. *See* Dkt. 32. CenterPoint asks me to strike the second response as untimely. *See* Dkt. 35. Relatedly, Crocker recently sought leave to file a supplemental response/surreply, responding to CenterPoint's request to strike the second response. *See* Dkt. 36. Crocker then filed a proposed supplemental response on the court's docket. *See* Dkt. 37. To give Crocker, who is representing himself, every opportunity to set forth his position in opposition to summary judgment, I will not strike his second response. I will also grant his motion to file a supplemental response/surreply. *See* Dkt. 36.

scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quotation omitted). To determine whether good cause exists, the Fifth Circuit requires district courts to consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Marathon*, 591 F.3d at 470 (quotation omitted).

None of these factors support allowing Crocker to amend his pleadings at this late date. To start, Crocker offers no explanation why his proposed new claims could not have been brought before the expiration of the deadlines set forth in the Docket Control Order. Crocker's failure to offer any explanation is, standing alone, sufficient to deny amendment. *See Banks v. Spence*, 114 F.4th 369, 371 (5th Cir. 2024) (no need for a district court to engage in the remainder of the four-factor analysis if the moving party fails to explain why he could not have amended the complaint before the court's deadline). The pleading deadline ended more than 10 months ago. All discovery was due by January 27, 2025. The dispositive motion deadline occurred on March 3, 2025. Throughout that entire period, Crocker was represented by counsel who could have sought to amend the live pleading but did not.[5] This strongly militates against allowing Crocker to amend now. *See E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (finding denial of leave to amend "squarely within [the district court's] sound discretion" where the defendant "had time to obtain discovery and seek leave to amend by the . . . deadline").

---

[5] On March 12, 2025, I signed an order allowing Crocker's former counsel to withdraw from the case. *See* Dkt. 24.

With respect to the second Rule 16(b)(4) factor, I cannot determine the importance of any amendment. Crocker merely identifies a list of claims he would like to assert in this litigation; I have no basis to discern whether those potential claims have merit or are futile. What I do know is that Crocker could have asserted the claims he now wishes to pursue through amendment from the outset of this litigation. *See S&W Enters.*, 315 F.3d at 536. This factor does not support amendment.

Under the third factor, I must assess whether allowing the late amendment will prejudice CenterPoint. "A defendant is prejudiced if an added claim would require the defendant to reopen discovery and prepare a defense for a claim different from the one that was before the court." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (citation modified). Likewise, an amendment that "would fundamentally alter the nature of the case" is considered prejudicial and may be denied. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004). Here, the prejudice is obvious and substantial. At this late date, it would be patently unfair to force CenterPoint to, in effect, start this litigation from scratch to address a plethora of new discrimination and retaliation claims.

The final factor asks whether a continuance would cure any prejudice to CenterPoint caused by the late amendment. "Although a continuance could mitigate the prejudicial effect of the proposed amendment, requiring [CenterPoint] to participate in discovery on the additional [claims for relief] would undoubtedly result in delay and additional cost." *Moreno v. Silvertip Completion Servs. Operating, LLC*, No. 7:19-cv-240, 2020 WL 6867056, at *3 (W.D. Tex. Nov. 13, 2020); *see also Harrison v. Aztec Well Servicing Co.*, No. 1:20-cv-038, 2021 WL 5280956, at *5 (N.D. Tex. Nov. 12, 2021) ("And even though a continuance would cure any evidentiary prejudice, a continuance could not cure the prejudice [CenterPoint] would suffer from needing to contest the [claims] on their merits."). Accordingly, the fourth factor weighs against permitting Crocker's amendment.

Having considered the Rule 16(b)(4) factors, I refuse to allow Crocker to add and pursue new claims this late in the litigation.

## CONCLUSION

For the reasons explained above, I grant CenterPoint's motion for summary judgment (Dkt. 20) and deny Crocker's motion for clarification (Dkt. 26). I also deny Crocker leave to amend his lawsuit to add new causes of action that were not included in his state court petition. A final judgment will issue separately.

SIGNED this 9th day of July 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

13